**UNITED STATES of America, and Joseph H. Romine, Special Agent of the Internal Revenue Service, Petitioners-Appellees,**

v.

**Frank E. HADDAD, Jr., Respondent-Appellant.**

**No. 75–1351.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 10, 1975.

Decided Dec. 10, 1975.

Frank A. Logan, Louisville, Ky., for respondent-appellant.

---

Melvin B. Lewis, Chicago, Ill., for amicus curiae.

George J. Long, U. S. Atty., Louisville, Ky., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Tax Div., Dept. of Justice, Washington, D. C., Robert E. Lindsay, Charles E. Brookhart, Washington, D. C., for petitioners-appellees.

Before WEICK, MILLER and ENGEL, Circuit Judges.

William E. MILLER, Circuit Judge.

This is an appeal from an order of the district court, Western District of Kentucky, enforcing a summons issued pursuant to 26 U.S.C. Sec. 7601 *et seq.* by an agent of the Internal Revenue Service ("IRS").

The appellant ("Haddad"), an attorney, had represented one Ray Palmer and others in a criminal case in 1971. After the conclusion of the criminal case, IRS issued a tax assessment for excise taxes allegedly due from Palmer. Haddad also represented Palmer in the excise tax matter.

In June 1974, IRS notified Haddad that the income tax liability of Palmer for the years 1970 through 1972 was being investigated and requested that Haddad furnish information concerning legal fees received by Haddad from Palmer. Haddad refused to comply with the request unless IRS obtained a release from Palmer of the attorney-client privilege. Palmer subsequently refused to waive the privilege.

On August 29, 1974, IRS agent Joseph H. Romine issued a summons to Haddad requiring production of Haddad's records pertaining to fees paid by or on behalf of Palmer and directing Haddad to appear before Romine.[1] Haddad appeared as directed but refused to comply further with the summons. The government then filed a petition in district court to enforce the summons. A hearing on the petition was held on October 22, 1974, when Romine, the only witness, testified that he was an agent in the Intelligence Division of IRS and that he had issued the summons in furtherance of a joint investigation of Palmer by the Audit and Intelligence Divisions initiated by the Intelligence Division. Romine stated that the investigation was incomplete and that the information sought by the summons was necessary to determine the correct tax liability of Palmer. There has been no recommendation for criminal prosecution of Palmer, and Romine stated that a recommendation for disposition of the case cannot be made until the investigation is completed.

■ Since in this case there is no evidence of a lack of good faith on the part of IRS in the issuance of the summons, since no criminal prosecution has been recommended, and since there is present in the record convincing evidence that the sole purpose of the investigation was not for criminal prosecution, under applicable and controlling authority the issuance of the summons was clearly proper. *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971); *United States v. Weingarden,* 473 F.2d 454 (6th Cir. 1973).

■ Appellant argues that the district court erred in ruling that fees paid to an attorney by a client are not communications protected by the attorney-client privilege but are merely the consideration given by a client for obtaining the legal services of his attorney. In the absence of special circumstances, the amount of money paid or owed to an attorney by his client is generally not within the attorney-client privilege. *In re Michaelson,* 511 F.2d 882, 888 (9th Cir.), *cert. denied,* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975); *see In re*

---

1. Specifically, the summons directed Haddad to produce for inspection records reflecting attorneys' fees paid to Haddad by Palmer on his own behalf, by others on behalf of Palmer, or by Palmer on behalf of others, for the years 1970, 1971 and 1972. The summons stated that the information sought should reflect the dates, the amount and the medium of exchange used to pay the attorneys' fees. Haddad was also directed to produce records reflecting the amounts owed by Palmer at the close of each of the three years under investigation.

*Grand Jury Proceedings,* 517 F.2d 666, 670–71 (5th Cir. 1975). The receipt of fees from a client is not usually within the privilege because the payment of a fee is not normally a matter of confidence or a communication. *United States v. Hodgson,* 492 F.2d 1175 (10th Cir. 1974). This Court has held that ministerial or clerical services of an attorney in transferring funds to or from a client is not a matter of confidence protected by the attorney-client privilege. *United States v. Bartone,* 400 F.2d 459 (6 Cir. 1968), *cert. denied,* 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969).

Special circumstances, however, may justify an exception to the general rule. In *In re Grand Jury Proceedings, supra,* certain attorneys were held in contempt by the district court after refusing to disclose before a federal grand jury the identity of unknown third parties who might have furnished bond money or paid (or promised to pay) attorneys' fees for known clients. The amount of the bond and the fees were high in some cases, and the Court, in reversing the district court, found that the sole motive of the government in seeking such information was ". . . to corroborating or supplementing already-existent incriminating information about persons suspected of income tax offenses . . . ." *Id.* at 674. *See also Baird. v. Koerner,* 279 F.2d 623 (9th Cir. 1960); *Tillotson v. Boughner,* 350 F.2d 663 (7th Cir. 1965). No such special circumstances exist in this case.

■ Appellant also argues that the district court erred in denying Haddad the right to assert the Fifth Amendment rights of his client Palmer. The Fifth Amendment privilege against self-incrimination has been characterized as a personal privilege. The privilege does not permit an attorney to plead that his client might be incriminated by his testimony. *United States v. Goldfarb,* 328 F.2d 280 (6th Cir. 1964); *see United States v. Mayes,* 512 F.2d 637, 649 (6th Cir. 1975). In *Couch v. United States,* 409 U.S. 322, 93 S.Ct. 611, at page 616, 34 L.Ed.2d 548 (1973), the Supreme Court stated at page 328:

It is important to reiterate that the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him. As Mr. Justice Holmes put it: "A party is privileged from producing the evidence, but not from its production." *Johnson v. United States,* 228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913). The Constitution explicitly prohibits compelling an accused to bear witness "against himself"; it necessarily does not proscribe incriminating statements elicited from another. Compulsion upon the person asserting it is an important element of the privilege, and "prohibition of compelling a man . . . to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from *him*," *Holt v. United States,* 218 U.S. 245, 252–253, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910) (emphasis added). It is extortion of information from the accused himself that offends our sense of justice.

In this case, Haddad does not claim that the information sought by IRS would tend to incriminate *him.*

■ Even if it should be held that an attorney has standing to assert his client's Fifth Amendment privilege against self-incrimination, we would then have to decide whether the client himself is shielded by the Fifth Amendment from the compelled production of his attorney's records reflecting payment of attorneys' fees by or on behalf of the client. *See United States v. White,* 477 F.2d 757, 762 (5th Cir. 1973), *aff'd en banc,* 487 F.2d 1335 (5th Cir. 1973), *cert. denied,* 419 U.S. 872, 95 S.Ct. 132, 42 L.Ed.2d 111 (1974). In *White* the question was whether the Fifth Amendment shields an attorney's client from the

compelled production from the attorney of workpapers owned and prepared by the client's accountant and held in the attorney's possession. The workpapers in question had never been in the actual possession of the client. In refusing to hold that the client was shielded by the Fifth Amendment, the Court in *White, supra* at 763, interpreted the Supreme Court's decision in *Couch*:

> The lesson to be drawn from *Couch,* then, is that unless the taxpayer is actually in possession of documents sought by the government—or clearly has constructive possession—he will be unable to seek the shelter of the fifth amendment because he will not be the object of any impermissible governmental compulsion.

We believe that the reasoning of the Court in *White* is directly applicable to the facts of this case.[2] The facts in this case do not establish possession on the part of the client, actual or constructive, sufficient to enable Palmer to invoke the shield of the Fifth Amendment.

Appellant's other contentions we deem to be without merit.

The judgment of the district court is therefore

Affirmed.

---

**2.** In *United States v. Kasmir,* 499 F.2d 444 (5th Cir. 1974), *cert. granted,* 420 U.S. 906, 95 S.Ct. 824, 42 L.Ed.2d 835 (1975), the court arrived at a contrary conclusion where the taxpayer-client received the records from his accountant and then delivered them to his attorney.