In the Matter of GRAND JURY SUB-POENAS SERVED UPON David A. FIELD, Esq. and Anthony G. DiFalco, Esq.

No. M–11–18.

United States District Court, S. D. New York.

Jan. 9, 1976.

David A. Field, Anthony G. DiFalco, New York City, Petitioners, pro se.

Thomas J. Cahill, U. S. Atty., S. D. N. Y. by John J. Kenney, Asst. U. S. Atty., New York City, for respondent.

PIERCE, District Judge.

## MEMORANDUM OPINION

Petitioners on this motion, David A. Field (Field) and Anthony G. DiFalco (DiFalco), are attorneys who have been subpoenaed to appear before a United States Federal Grand Jury for the Southern District of New York. The purpose of the grand jury's inquiry has been stated to be determining the whereabouts of one Carlo Bordoni (Bordoni), a client of Field and DiFalco and a person sought by the grand jury as a witness. Field and DiFalco have moved, pursuant to Rule 17(c), Fed.R.Crim.P., to quash the subpoenas on the ground that to require them to provide the information sought would violate Bordoni's attorney-client privilege.

The facts, as set forth in the affidavits submitted by the parties, are as follows:

In July of 1975, the July additional 1975 grand jury was impanelled and continued an investigation previously conducted by several other grand juries into the facts surrounding the collapse of the Franklin National Bank. On August 11, 1975, that grand jury returned an indictment naming Bordoni, among others, as a defendant. Bordoni had been a director of the Franklin New York Corporation, a holding company owning the Franklin National Bank. A warrant for Bordoni's arrest remains unexecuted.

The grand jury investigation continued after the filing of the indictment and, according to the government, it has been determined that Bordoni may have information which is of importance to the investigation. Therefore, in an effort to locate Bordoni, subpoenas were served on Field and DiFalco.

The law firm of which Field and Di-Falco are members (the firm) has represented Bordoni on several occasions. In July, 1974 the firm commenced lawsuits on behalf of Bordoni growing out of several newspaper articles attributing to Bordoni certain of the losses sustained by the Franklin National Bank. Also in July, 1974, Field accompanied Bordoni to the Securities and Exchange Commission where Bordoni gave testimony to staff attorneys conducting an investigation into possible violations of the Securities Acts by the Franklin New York Corporation. Finally, some time between July and October of 1974, Bordoni consulted the firm in connection with his desire to change his residence from Milan, Italy to some other jurisdiction.

According to the affidavits of Field, Bordoni requested the firm to review the laws of a number of named jurisdictions in connection with Bordoni's proposed change of residence. The research was completed and communicated to Bordoni. Bordoni then changed his residence from Milan, Italy to one of the named jurisdictions, informed the firm of his new residence, and requested that the firm obtain counsel for him in that particular jurisdiction, which was done. Bordoni requested the firm to keep his new residence confidential.

Since Bordoni relocated, the Securities and Exchange Commission has commenced a civil action against him and others to enjoin each from further violations of the Securities Laws. Several private civil actions have been commenced against Bordoni and other members of the Board of Directors of the Franklin New York Corporation. And, the previously mentioned indictment has been filed against Bordoni and others. However, the Court has been made aware of no criminal investigation or suit which was pending against Bordoni at the time he relocated.

The facts as set forth have not been disputed in the affidavits submitted on this motion. Nor has either of the parties requested an evidentiary hearing for the purpose of challenging the assertions in the affidavits. Therefore, the Court considers these facts to be established for the purposes of the instant application.

### Discussion

The grand jury has traditionally been accorded wide latitude to inquire into violations of the criminal law and the duty of every citizen to testify has

long been recognized. *United States v. Calandra*, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974); *Blackmer v. United States*, 284 U.S. 421, 438, 52 S.Ct. 252, 76 L.Ed. 375 (1932); *Blair v. United States*, 250 U.S. 273, 281, 39 S.Ct. 468, 63 L.Ed. 979 (1919). The power of the federal court to compel persons to appear and testify is not in doubt. *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). Further, it has been held specifically that the grand jury may inquire as to the whereabouts of unlocated witnesses. *Hoffman v. United States*, 341 U.S. 479, 488, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Thus, there is no question in this case of the grand jury's general power to engage in the inquiry in question.

■ It is equally well settled that the subpoena powers of the grand jury are not unlimited. Specifically, the Supreme Court has noted that the grand jury "may not itself violate a valid privilege, whether established by the Constitution, statutes, or the common law." *United States v. Calandra, supra,* 414 U.S. at 346, 94 S.Ct. at 619. See *Branzburg v. Hayes*, 408 U.S. 665, 688, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950); 8 J. Wigmore, Evidence § 2192 (McNaughton rev. 1961) [hereafter, Wigmore]. In this instance the petitioners assert that to compel their testimony would violate the attorney-client privilege. Therefore, the first question to be addressed is whether the information sought from Field and DiFalco, i. e., the whereabouts of their firm's client Bordoni, is within the attorney-client privilege.

■ The purpose of the attorney-client privilege is to promote freedom of communication among attorneys and their clients by removing the fear of compelled disclosure by the lawyers of confidential information conveyed for the purpose of receiving legal advice. *Colton v. United States*, 306 F.2d 633 (2d Cir. 1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *United States v. Pape*, 144 F.2d 778 (2d Cir.),

*cert. denied*, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944); Wigmore § 2291. The scope of the privilege, as set forth by Wigmore, has been adopted by this Circuit as follows: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." Wigmore, § 2292. See *United States v. Stern*, 511 F.2d 1364, 1367–68 (2d Cir. 1975); *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961). Thus, it is clear that attorneys are not immune from grand jury process as a general matter. The burden of establishing the existence of the privilege rests on the movants. *United States v. Stern, supra,* at 1367.

■■ It has been held that as a general rule the privilege does not extend to the identity of an attorney's client. See *Colton v. United States, supra,* at 637; *United States v. Pape*, supra, at 782–83. Likewise, an attorney may be required to disclose the details of a retainer agreement including fee arrangements. *In re Michaelson*, 511 F.2d 882 (9th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975). Respondents argue that by the same token disclosure of the client's address should be required in this case.

■ The Court notes that this is not a case in which the fact of retention of counsel by a certain individual is in question. See *People ex rel. Vogelstein v. Warden*, 150 Misc. 714, 270 N.Y.S. 362 (Sup.Ct.N.Y.Co.), *aff'd mem.* 242 App. Div. 611, 271 N.Y.S. 1059 (1st Dep't 1934). Nor is it a case in which information is being withheld to frustrate a judgment of the court. See *Falkenhainer v. Falkenhainer*, 198 Misc. 29, 97 N.Y.S.2d 467 (Sup.Ct.Nas.Co.1950). In this Court's view, a determination of whether the client's whereabouts must be disclosed will depend on an analysis of the facts of the case and the nature of the

communication involved. See *In re Stolar*, 397 F.Supp. 520, 524 (S.D.N.Y.1975).

The government contends that the information given as to Bordoni's address is not protected by the privilege because it was not given for the purpose of receiving legal advice since, according to Field's first affidavit, dated October 10, 1975, Bordoni told his attorneys of his whereabouts after having received their advice concerning the various jurisdictions about which they did research. This argument must be rejected for two reasons. First, the Field reply affidavit, dated October 17, 1975, states that it was *in the course* of receiving advice from his attorneys concerning relocation and retention of counsel in his new place of residence that Bordoni revealed the place to which he intended to move. As noted *supra*, the government has neither challenged nor sought an opportunity to challenge this assertion. Thus, it appears clear to the Court that the information was conveyed as a part of the sequence of exchanges between lawyer and client and further, apparently related to the legal advice sought.

Further, even without the reply affidavit, it is this Court's view that the government's argument takes a much too linear view of the attorney-client relationship. This Court is not prepared to hold that when a client seeks legal advice from an attorney concerning a particular subject, all communications with the attorney with respect to that same subject lose whatever privileged status they might otherwise have the moment the attorney has rendered the opinion originally sought.

Next, the government argues that the information being sought by the grand jury is not within the attorney-client privilege because the grand jury is seeking information concerning Bordoni's whereabouts and is not concerned with his residence, the subject about which he was advised by his attorneys. The privilege cannot be circumvented by such a formalistic distinction. The facts are that Bordoni sought information from his attorneys about a change of residence and, apparently acting on the basis of the information received, has relocated to one of the jurisdictions researched by them. The evidence shows that Bordoni's attorneys learned of his whereabouts precisely because he sought their advice with respect to that very matter. The Court concludes that on the facts of this case, the residence and whereabouts of Bordoni were communicated to these attorneys in confidence, as an incident to the obtaining of legal advice and as part of an attorney-client relationship. Therefore, this is a communication within the scope of the privilege.

The attorney-client privilege is not absolute. *In re Horowitz*, 482 F.2d 72, 81–82 (2d Cir.), *cert. denied*, 414 U.S. 867, 94 S.Ct. 64, 38 L.Ed.2d 86 (1973). Wigmore has said that it "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle." Wigmore at § 2291. The Court believes this ruling to be in accord with this principle. The Court does not hold that a client's address is information which always falls within the privilege. As with a client's identity, it may be only in rare instances that this information will be protected. See *Colton v. United States, supra*, at 637; *Baird v. Koerner*, 279 F.2d 623, 631 (9th Cir. 1960). Certainly the information will not be considered privileged simply because the client communicated his address to his attorney to enable him to receive advice about matters having nothing to do with that information. However, where as here, the address is communicated for the specific purpose of receiving legal advice and the address itself is at the heart of the advice sought, it would defy the logic of the attorney-client privilege to hold that the communication is not within the scope of that privilege.

The Court notes that there is no allegation that the advice rendered by counsel in this case was given for the purpose of aiding Bordoni in the commission of any crime. Nor is there any claim that the advice was rendered in bad faith to

enable the defendant to avoid any criminal investigation or proceeding pending at the time the advice was given. Nor is there any allegation that the advice was rendered to enable Bordoni to avoid lawful process in any proceeding pending at the time the advice was given.

If the information sought by the grand jury concerning Bordoni had been communicated by Bordoni to Field and DiFalco in any capacity *other than* their capacity as Bordoni's attorneys, then no doubt they could be required to reveal the information, even though an attorney-client relationship was in existence at the time. See *In re Kinoy*, 326 F.Supp. 400 (S.D.N.Y.1970). However, under the circumstances of this case, the information communicated was privileged and the privilege must be protected.

The motion to quash is granted.

So ordered.