603 F.2d 1231
 UNITED STATES of America, Plaintiff-Appellee,
v.
ONE RESIDENCE AND ATTACHED GARAGE OF ANTHONY J. ACCARDO
DESIGNATED AS 1407ASHLAND AVENUE, RIVER FOREST,
ILLINOIS AND LOCATED ON the NORTHEAST
CORNER ATINTERSECTION OF
ASHLAND AVENUE AND
GREENFIELD.
Appeal of Anthony J. ACCARDO, Movant.
 No. 78-2485.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 27, 1979.
Decided June 29, 1979.
As Amended July 2, 1979.
 
 Carl M. Walsh, Chicago, Ill., for movant-appellant.
 Charles C. Wehner, Chicago Strike Force, Chicago, Ill., for plaintiff-appellee.
 Before SWYGERT, BAUER and WOOD, Circuit Judges.
 BAUER, Circuit Judge.
 
 
 1
 The issue herein presented is the appealability by movant-appellant of an order denying his "pre-indictment" motion for return of property pursuant to Rule 41(e), Fed.R.Crim.P.[1] Appellant claims the adverse order is final and appealable pursuant to 28 U.S.C. § 1291, whereas the government argues the order is interlocutory and not appealable.
 
 
 2
 The facts of this case, insofar as they are defined for purposes of this appeal, are strange but straightforward up to a point. Certain of the facts are apparently uncontested.
 
 
 3
 Anthony J. Accardo and his wife own, in joint tenancy, a residence in River Forest, Illinois. In January of 1978, Mr. and Mrs. Accardo were vacationing in California. Several people mostly relatives had access to the premises for various purposes. A nonrelative, one Michael Volpe, also had access to the premises; he apparently was employed by Accardo as a handyman. Volpe discovered a forced entry of the Accardo residence in January, 1978, and notified Accardo of that fact. Mr. Accardo immediately returned to River Forest.
 
 
 4
 It is interesting to note that neither Volpe nor Accardo notified any law enforcement agency, state or federal, about the break-in. As a matter of fact, the record before us is silent as to how the police eventually discovered that a burglary had occurred. The record is also silent as to whether the failure to report the fact to the police was based on a lack of faith in the powers of the police to solve the crime or a basic mistrust of dealing with law enforcement agencies that has roots in some earlier, and also unexplained, experience of Accardo.
 
 
 5
 At any rate, some time after the burglary shortly thereafter, as a matter of fact various people described by the government as "known burglars" began showing up dead, none from natural causes, in the Chicago Metropolitan area.[2]
 
 
 6
 The sudden increase of homicides within a particular, and one might hope, limited professional group, apparently fanned the normally suspicious attitudes of the various law enforcement agencies to a fevered pitch. Eventually, the Federal Bureau of Investigation began to look into the facts and circumstances herein described.
 
 
 7
 At some point during the federal investigation certain people were brought before a grand jury to shed some light on the events; these included members of the Accardo family and also Mr. Michael Volpe, the handyman.[3] Sometime after Mr. Volpe's appearance before the grand jury and while he was still subject to recall before that body, he left his home for his usual place of employment the Accardo residence and seemingly disappeared from human knowledge.
 
 
 8
 This final mysterious touch to the affair led the Department of Justice, acting through a Special Attorney and the Federal Bureau of Investigation, to seek and secure a search warrant for the premises of the Accardos for the purpose of locating
 
 
 9
 "personal effects including keys, wallet, credit cards, jewelry, clothing and automobile of Michael Joseph Volpe and evidence of destruction by incineration and secreting of the above items which are evidence of the obstruction of justice by person or persons unknown by endeavoring to secrete, make unavailable, and/or abduct Michael Joseph Volpe, a witness before the Special September 1978 Grand Jury."
 
 
 10
 The warrant issued and the agents went to the Accardo home. They were admitted by one of the Accardo daughters. After photographing the interior, the agents seized the following items:
 
 
 11
 1. a Regency police scanner;
 
 
 12
 2. a memo address pad;
 
 
 13
 3. a pair of cuff links (taken from a dresser drawer);
 
 
 14
 4. some debris burnt ashes and "residue" from the incinerator;
 
 
 15
 5. two Smith and Wesson revolvers (taken from a safe in the basement); and
 
 
 16
 6. $275,000 in cash (found in box also in the safe or vault).
 
 
 17
 It is these seized items that are the subject matter of the instant appeal. The government states that those items seized, not on the original warrant, were covered by the "plain view" doctrine and were subject to lawful seizure while the agents were engaged in a search pursuant to a lawful search warrant. The government concedes that "(t)here must, of course, be a nexus . . . between the item(s) to be seized and criminal behavior." Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 1650, 18 L.Ed.2d 782 (1967); United States v. Schire, 586 F.2d 15, 19 (7th Cir. 1978).
 
 
 18
 In DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), the Court held a motion for return of property seized by the government can be maintained only if the property is in no way tied to a criminal prosecution In esse against the movant and a denial of such a motion is an appealable order. Meier v. Keller, 521 F.2d 548 (9th Cir. 1975); United States v. Hines, 419 F.2d 173 (10th Cir. 1969). The government also concedes that this standard has been adopted by the various circuits in determining their jurisdiction over appeals from denials of pre-indictment motions for the return of seized property.
 
 
 19
 Let us see how the government resolves the problem of establishing a "criminal prosecution In esse " and the nexus between the property seized and criminal behavior.
 
 
 20
 As is admitted, the seizure included some items that are not within the purview of the search warrant. One could easily suggest that the memo pad and the debris might have some reasonable relationship to "evidence of the obstruction of justice," or other crimes. Even the cuff links might, by stretching the imagination, have some relevance although the explanation for this item seems a bit feeble at best. Assuming the search for Volpe, the missing witness, was the reason for the seizure, one must contemplate the handyman arriving for work wearing French cuffs and gold cuff links.
 
 
 21
 The police scanner might have a reasonable relationship, according to the testimony at the hearing in the district court, to the death of one of the "known burglars," and the same might be said of the guns that were seized. What does Not appear to be covered by the warrant or by connection to other crimes is the $275,000 in cash.
 
 
 22
 Now it is true that keeping that sum in cash in one's home might be considered a casual perhaps even careless approach to money by most people. Even a disinterested observer might be forgiven for believing that Mr. Accardo exhibited the same lack of trust in banks that he exhibited in his attitude toward the police. (It is interesting to note that this sum large for walking-around money even in a wealthy suburb was found After the premises had been subjected to a burglary. While it is idle to speculate, one would have wished for a proof-of-loss statement after the break-in of January, 1978.) Nevertheless, the seizure of this money must be pursuant to some legitimate police activity.
 
 
 23
 As nearly as the record shows, the government suggests that the money has evidentiary value because it might "be possible evidence of a motive for the burglary of Mr. Accardo's home." (Testimony of Special Agent Shelton.) Assuming the truth of this statement, it nevertheless affords the government no right to maintain custody of the money. To hold that such a seizure and continued possession is lawful would permit the police to seize and hold property of a burglary victim that had Not been taken by the burglars. The absurd result is that any property not stolen can be seized. The fact is, the property seized was taken from the victim, not the burglar. As a temptation factor, it is not subject to seizure.
 
 
 24
 The government also suggests that the cash might be evidence of "perjury." Again, if this be true, it certainly is evident that the perjury contemplated is not that of either Mr. or Mrs. Accardo. Their silence is almost deafening. Far from lying about any event in issue, the Accardos have maintained a total silence on every phase of the matter. From the record in this case, the government would have difficulty maintaining that either of the Accardos could communicate at all. The fact that someone else may have lied about the Accardo cash does not permit the government to seize and hold it.
 
 
 25
 The government also maintains that the appellant has not met the requirement of maintaining a motion under Rule 41(e) of the Federal Rules of Criminal Procedure in that he failed to show "lawful possession of the seized items." This argument is patently frivolous. Ownership of the premises where the property was seized and the seizure itself from those premises are surely not contested. Under such a showing, and absent a government showing of unlawful possession, the property cannot be withheld. Property of private citizens simply cannot be seized and held in an effort to compel the possessor to "prove lawful possession."
 
 
 26
 In sum, we are satisfied that the government is engaged in a criminal investigation of various matters growing out of an alleged burglary of the Accardo residence. We also hold that the appellant may maintain the motion and appeal the denial for the return of property seized under a search warrant, pre-indictment, and the government can successfully resist such a motion by showing that the property seized is tied to a criminal investigation In esse, DiBella, supra, and that there is a nexus between the property seized and criminal behavior, Warden v. Hayden, supra. At least as far as the cash herein seized the government has failed to show any possible connection between it and any alleged criminal act of the appellant. The government cannot, therefore, maintain possession of the money.
 
 
 27
 On the issue of the appealability and the return of the cash, I am joined by my Brother Swygert; on the issue of the sufficiency of the showing of a criminal investigation In esse and the nexus of the property seized to the investigation, I take comfort and read the approval of my Brother Wood. I agree with both Judges Swygert and Wood that the issue of suppression in the event of an indictment or criminal charge is not disposed of by these proceedings.
 
 
 28
 Therefore, we reverse the order of the district court denying the motion to return appellant's property as to the $275,000 and affirm the ruling as to the remaining articles seized.
 
 
 29
 Affirmed In Part, Reversed In Part.
 
 
 30
 SWYGERT, Circuit Judge, concurring in part and dissenting in part.
 
 
 31
 I concur in Judge Bauer's opinion on the issues of appealability and the return of the seized $275,000 and in that regard write only to offer my analysis of the questions there involved. With regard to the return of the other seized items, however, I find myself in dissent as to the affirmance of that part of the district court's order.
 
 
 32
 The analysis in cases involving a motion under Fed.R.Crim.P. 41(e) must begin with a determination of whether or not there is a prosecution In esse against the moving party. This determination is required by DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), wherein the Supreme Court ruled that a Rule 41(e)-type motion is interlocutory in nature and unappealable if it is tied to a criminal prosecution In esse against the movant. Id. at 131-32, 82 S.Ct. 654.
 
 
 33
 This court has recently determined that point at which a prosecution comes into being for purposes of a motion for return of property. In Mr. Lucky Messenger Service, Inc. v. United States, 587 F.2d 15, 16 (7th Cir. 1978), we stated:
 
 
 34
 The motion for return of property is not one tied to a criminal prosecution in esse against the movant until the criminal process shifts from the investigatory phase to the accusatory. See Shea v. Gabriel, 520 F.2d 879, 882 (1st Cir. 1975). In the present case, no charges have been filed and thus the criminal process, if still alive, is at best in the investigatory stage. Accordingly, the district court's order is a final appealable order.
 
 
 35
 Admittedly, that case involved not a Rule 41(e) motion but a motion seeking the return of seized property which invoked the court's general equitable jurisdiction. Inasmuch as this court in Mr. Lucky defined a prosecution In esse with direct reference to the DiBella rule, Id., I believe the Mr. Lucky definition should be applied to Rule 41(e) motions. Accordingly, because no criminal charges have yet been filed in the instant case, there is no prosecution In esse; the criminal process is at best in the investigatory stage. Id. The DiBella opinion itself supports this determination. The Court there required that an order on a suppression motion be treated as part of a prosecution In esse "(w)hen at the time of (the) ruling there is outstanding a complaint, or a detention or release on bail following arrest, or an arraignment, information, or indictment." 369 U.S. at 131, 82 S.Ct. at 660. In the instant case, no such accusatory event has taken place.
 
 
 36
 Once it has been determined that the Rule 41(e) motion is appealable, the merits of that appeal must be addressed. I concur with Judge Bauer's outcome regarding the return of the seized money, but I believe an affirmance of the district court's denial of the return of the other seized items is premature.
 
 
 37
 Rule 41(e) provides that a person aggrieved by an illegal search and seizure may move for the return of illegally seized property. In order to decide the merits of such a motion, the court must pass on the legality of the search and seizure. As Judge Bauer indicates in his opinion, not all of the items seized in the search of the Accardo home were named in the search warrant. Thus, some exception to the general warrant requirement must be present to validate the seizure of these items.
 
 
 38
 The Government contends that the items seized but not listed in the warrant are covered by the "plain view" doctrine, which allows warrantless seizure of certain items found in plain view. These items include instrumentalities of crime, fruits of crime, contraband, or even "mere evidence" of crime for which there is probable cause to believe that the evidence will aid in a particular apprehension or conviction. See Warden v. Hayden, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). I agree with Judge Bauer that the Government has failed to show a sufficient nexus between the property seized and criminal behavior in the case of the money, and that therefore the money must be returned regardless of the validity of the search.
 
 
 39
 As to the other items seized but not listed in the warrant, the Government presents at least a colorable showing of sufficient nexus for each item. Assuming, Arguendo, the existence of this nexus, the seizure of these items may yet be invalidated if the search warrant is invalid. This is because the plain view doctrine by which the Government seeks to justify these seizures requires that the agent must have been lawfully at the vantage point from which he gained his plain view.[1] Thus, if the underlying search warrant is invalid, the agents would not lawfully have been in the residence, and even the plain view of items which they obtained from their unlawful vantage point would be insufficient to validate the seizures.
 
 
 40
 In the instant case, movant has indeed challenged the validity of the search warrant, but his challenge in this regard has been hampered by the fact that the Government affidavit which supports the search warrant and purportedly supplies the requisite probable cause has been ordered impounded because reference is made in the affidavit to grand jury testimony. The affiant was able to refer to this testimony because portions of it were ordered released for this purpose by the court pursuant to a Fed.R.Crim.P. 6(e)[2] motion made by the Government.
 
 
 41
 In the process of deciding the instant case, the district court reviewed the impounded affidavit In camera and ruled that probable cause had been established thereby for the warrant's issuance. The court denied movant's motions to be allowed to examine the affidavit.
 
 
 42
 The Government concedes that movant would be entitled to review the affidavit in order to seek suppression of the seized items in the event of an indictment, but relies on Shea v. Gabriel, 520 F.2d 879 (1st Cir. 1975), in arguing that the affidavit need not be released to movant at this stage of its investigation. In Shea the court indicated that pre-indictment release should be denied, but it based this view on the fact that the district court in that case had thoroughly analyzed all of the competing factors involved:
 
 
 43
 First, the district court carefully balanced the government's interest in secrecy to protect its on-going investigation against the temporary loss to Shea of the property here at issue. We are not inclined to disturb the balance struck, at least absent any reason to believe that the cloak of secrecy is being abused by the government. Second, the judge below did entertain the appellant's complaint to the extent he could within the confines of the secrecy requirement. He examined the affidavit In camera and determined that it was at least Prima facie support for a finding of probable cause. Third, the dismissal was without prejudice to reasserting the claim if the government's delay in either prosecuting or taking other dispositive action reaches unreasonable proportions. . . . Lastly, appellant made no effort to show that he is entitled to lawful possession of the seized items.
 
 
 44
 520 F.2d at 882.
 
 
 45
 In the case at bar, I am not convinced that the district court adequately considered all of these factors. Accordingly, I believe an affirmance of this part of the court's order is premature, and I would remand for a more thorough analysis. Moreover, I would make it clear that the district court's finding, based on its In camera inspection of the affidavit, that "the facts set forth therein sufficiently establish probable cause for issuance of (the) search warrant," is merely preliminary in nature. It does not foreclose a complete, De novo review of the issue either if movant is indicted or if the Government's delay in prosecuting or otherwise disposing of the action reaches unreasonable proportions. See Shea v. Gabriel, 520 F.2d at 882.[3]
 
 
 46
 Thus, I join Judge Bauer in reversing the district court's denial of the Rule 41(e) motion as to the return of the seized money. I would, however, vacate the court's order as to the return of the other unlisted, seized items, remanding that portion of the case for further consideration in accordance with the views set forth in this opinion.
 
 
 47
 HARLINGTON WOOD, Jr., Circuit Judge, dissenting.
 
 
 48
 I regret I cannot join in Judge Bauer's classic opinion as I have reservations about the appealability of the order.
 
 
 49
 The grand jury investigation, the government explains, involves possible violations of the federal racketeering[1] and obstruction of justice statutes.[2] The government further states that appellant is the principal suspect and target of the grand jury investigation, and has been so advised.
 
 
 50
 Four days after execution of the search warrant appellant filed two related motions. The motion for Return of Property pursuant to Rule 41(e), Fed.R.Crim.P., is captioned in the search warrant proceedings. In support of that motion it is alleged that the seizure was illegal and that appellant was in lawful possession of the property seized. The other motion was titled Motion to Enjoin Government. The thrust of that motion was to restrain the government from making any use of the seized property and to have all the seized items deposited with the clerk pending disposition by the court of the Rule 41(e) motion. The motions were denied.
 
 
 51
 Both parties rely to some extent on DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), to support their positions on appealability. In each of the two consolidated cases considered in DiBella, the defendant had been arrested before the motion was filed under the prior but similar Rule 41(e) for the return of property and its suppression as evidence, and each defendant was indicted before the motion was decided. Even though the factual backgrounds in DiBella may therefore be distinguished from appellant's status since he has not to date been charged with an offense growing out of the grand jury investigation, I believe we must look to DiBella for guidance and follow its rationale so far as it may be applicable to appellant's situation. The DiBella court in holding the orders non-appealable explained:
 
 
 52
 An order granting or denying a pre-indictment motion to suppress does not fall within any class of independent proceedings otherwise recognized by this Court, and there is every practical reason for denying it such recognition. To regard such a disjointed ruling on the admissibility of a potential item of evidence in a forthcoming trial as the termination of an independent proceeding, with full panoply of appeal and attendant stay, entails serious disruption to the conduct of a criminal trial. The fortuity of a pre-indictment motion may make of appeal an instrument of harassment, jeopardizing by delay the availability of other essential evidence. . . . Furthermore, as cases in the Second Circuit make clear, appellate intervention makes for truncated presentation of the issue of admissibility, because the legality of the search too often cannot truly be determined until the evidence at the trial has brought all circumstances to light.
 
 
 53
 369 U.S. at 129, 82 S.Ct. at 659 (citations omitted).
 
 
 54
 We hold, accordingly, that the mere circumstance of a pre-indictment motion does not transmute the ensuing evidentiary ruling into an independent proceeding begetting finality even for purposes of appealability. Presentations before a United States Commissioner . . . as well as before a grand jury . . . are parts of the federal prosecutorial system leading to a criminal trial. Orders granting or denying suppression in the wake of such proceedings are truly interlocutory, for the criminal trial is then fairly in train. When at the time of ruling there is outstanding a complaint, or a detention or release on bail following arrest, or an arraignment, information, or indictment in each such case the order on a suppression motion must be treated as "but a step in the criminal case preliminary to the trial thereof." . . . Only if the motion is solely for return of property and is in no way tied to a criminal prosecution in esse against the movant can the proceedings be regarded as independent.
 
 
 55
 Id. at 131-32, 82 S.Ct. at 660 (citations omitted, emphasis added). The courts have found the test in the last sentence above. The denial of a preindictment motion is an interlocutory, non-appealable order unless "the motion is solely for return of property and is in no way tied to a criminal prosecution In esse against the movant." Meier v. Keller, 521 F.2d 548, 556 (9th Cir. 1975); United States v. Hines, 419 F.2d 173, 175 (10th Cir. 1969). Under that rule had the appellant been the subject of a complaint or indictment at the time the motion was filed, possibly even at the time the order was entered,[3] the order would clearly have been non-appealable, but that is not this case.
 
 
 56
 Nonetheless, I cannot regard the appellant's Rule 41(e) motion as "solely" for the return of property. His motion may be clearly distinguished from the proceeding we recently considered in Mr. Lucky Messenger Service, Inc. v. United States, 587 F.2d 15 (7th Cir. 1978). In Lucky Messenger the plaintiff filed not a Rule 41(e) motion, but a new independent civil action seeking through the exercise of the court's general equitable jurisdiction only the return of money seized pursuant to a search warrant, not the suppression of evidence. The appellant does not specifically ask in his 41(e) motion that the property be suppressed as evidence. He need not bother as Rule 41(e) clearly takes care of that for him. Rule 41(e) provides by its own terms that the granting of the motion automatically precludes admissibility. United States v. The Merchant Diamond Group, Inc., 565 F.2d 252, 253 (2d Cir. 1977). Not only would the allowance of the motion restore the property and suppress its use as evidence, it would also extend to the fruits of the search. Evidence discovered through any related leads would also thereby become inadmissible at any hearing or trial in all courts forever. I do not see that the automatic suppression effect of the motion is affected by the stage of the criminal proceeding at which the seizure is challenged. I am not aware of any offer by appellant to waive the suppression provision of Rule 41(e) even assuming the waiver might be effective. I am, however, aware that the failure of Rule 41(e) to discriminate between the return of seized property and its suppression has been criticized, United States v. Wilson, 176 U.S.App.D.C. 321, 324, 540 F.2d 1100, 1103 (1976), or separated into two parts, Shea v. Gabriel, 520 F.2d 879, 881 (1st Cir. 1975), or transformed into something different, Richey v. Smith, 515 F.2d 1239, 1245 (5th Cir. 1975), but regardless of whatever criticisms the present rule may deserve, I do not believe it is the responsibility of this court to rewrite it.
 
 
 57
 Another circumstance is that the appellant filed with his Rule 41(e) motion another motion directly related to the first motion which sought to require that the property be deposited with the clerk of the court, and the government be enjoined from using the seized property in any manner whatsoever pending the court's determination of the Rule 41(e) motion. The appellant thereby sought the suppression of the property as evidence even in advance of the suppression which would follow by the allowance of the 41(e) motion. Appellant argues that the government is attempting to recast this appeal of the denial of a motion for the return of property into a motion to suppress. I believe the goal of the appellant is clear. It is to obtain the fringe benefit of suppression, perhaps even more than the mere return of the money. The motion made no special issue of the money. The first prong of the DiBella appeal exception of being "solely" for the return of property is therefore not satisfied. In the majority opinion I find no consideration or mention made of the DiBella use of "solely" or of the resulting suppression of evidence.
 
 
 58
 Appellant filed his motions almost immediately after the execution of the search warrant at a time when the grand jury investigation of him was just getting under way. The government satisfied the district judge about the relevancy of the property seized. I would not require at this stage of the proceedings that the government disrupt and delay the grand jury process in order to lay bare its investigation in a mini-trial for the benefit of appellant's motion. That procedure could possibly jeopardize the whole investigation. Appeal at this time unnecessarily prolongs the grand jury disruption. I do not see it on balance to be necessary nor in the public's interest. The relevance of the money, it is true, is not clear to us at this stage of the proceedings, but I am neither the United States Attorney nor a member of the grand jury and am therefore not privy to their information and theories. That being so, I am hesitant to adopt the majority's characterization of the government's seizure of the money merely as the seizure from a victim of what the burglars may have overlooked. The appellant should not be viewed just as the victim of a local crime, but as the target of an active federal investigation into major crimes. It is clear that the federal government's interest in this case is not in the mere solving of a house robbery. That is purely a local matter. Possible violations of the federal racketeering and obstruction of justice statutes, however, are of great public importance. I see no need at this time for the government to tell us all about it. It should not be required to choose between justifying its investigation step by step and, failing that, suffering on appeal the suppression of the seized evidence, rendering it forever immune from law enforcement use. There is a better time for all of that if and when it becomes necessary. The life of the special grand jury is controlled by statute under the court's direction.[4] It does not enjoy eternal life. After any failure to return an indictment there would no longer be a suppression issue nor a pending criminal proceeding. At that time an adverse order would clearly be appealable. It cannot be said at this time, however, that no indictment will be forthcoming in the near future, or would have been forthcoming but for the suppression of the evidence resulting from the decision of this court.
 
 
 59
 Appellant would not be left, however, without a remedy. If we were to dismiss this appeal, he could still file a Lucky Messenger type independent civil action for the return of the property. That avenue of relief, if meritorious, would not serve to suppress the property as evidence. Appellant's Rule 41(e) motion cannot be converted into a motion seeking equitable relief, because it alleges, for instance, no callous disregard for the constitutional rights of appellant nor any irreparable injury to him resulting from not having present possession of the money. Richey v. Smith, 515 F.2d 1239, 1243 (5th Cir. 1975). Appellant may also have a partial remedy in a separate cause of action for damages against the agents alleged to have conducted the unlawful search. Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).
 
 
 60
 I would dismiss the appeal, but without prejudice to appellant to raise the same issue at a later time if the issue is not resolved in the meantime.
 
 
 
 [1]
 Rule 41(e), Fed.R.Crim.P., provides:
 "(e) Motion for Return of Property. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property on the ground that he is entitled to lawful possession of the property which was illegally seized. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored and it shall not be admissible in evidence at any hearing or trial. If a motion for return of property is made or comes on for hearing in the district of trial after an indictment or information is filed, it shall be treated also as a motion to suppress under Rule 12."
 
 
 [2]
 An interesting question arises as to whom a "known burglar" is known. If the government's theory, how ever vaguely expressed, is correct in this case, the occupation of the deceased persons involved must have been known to some large segment of the population. Such a reputation could not have been advantageous and indeed (again, reading investigative assumptions into the hearings) must sometimes be fatal
 
 
 [3]
 The records of the grand jury proceedings were submitted for In camera inspection, both to the trial court and this Court to aid the decision of the case
 
 
 [1]
 "The primary requisite necessary for the application of the plain view doctrine is that the officer has a right to be where he is when he observes the evidence in plain view." United States v. Cooks, 493 F.2d 668, 670 (7th Cir. 1974), Cert. denied, 420 U.S. 996, 95 S.Ct. 1437, 43 L.Ed.2d 679 (1975)
 
 
 [2]
 Fed.R.Crim.P. 6(e)(2)(A) provides:
 (A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to
 (i) an attorney for the government for use in the performance of such attorney's duty; and
 (ii) such government personnel as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce Federal criminal law.
 I note also the provisions of subpart C of Rule 6(e)(2):
 (C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made
 (i) when so directed by a court preliminarily to or in connection with a judicial proceeding: or
 (ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury.
 
 
 [3]
 I would not attempt inflexibly to define "unreasonable proportions" in advance, but would instead merely note that in Mr. Lucky, this court stated that
 if no charges are filed for nearly one and one-half years after the property was seized, and the Government is unable to present evidence justifying such a delay, constitutional violations emerge which would seem on equitable principles to mandate that the property be returned.
 587 F.2d at 17.
 
 
 [1]
 18 U.S.C. §§ 1961-1968
 
 
 [2]
 18 U.S.C. §§ 1503, 1510
 
 
 [3]
 As to the effect on appealability of a subsequent prosecution development, See Shea v. Gabriel, 520 F.2d 879, 881 (1st Cir. 1975); Parrish v. United States, 376 F.2d 601, 603 (4th Cir. 1967)
 
 
 [4]
 18 U.S.C. §§ 3331-3333