**In the Matter of Carl WALSH, a Witness Before the Special September 1978 Grand Jury.**

**Appeal of UNITED STATES of America.**

**No. 79-2340.**

United States Court of Appeals, Seventh Circuit.

May 19, 1980.

Rehearing and Rehearing In Banc Denied July 31, 1980.

William C. Bryson, Jody M. Litchford, Appellant Section, Crim. Div., Dept. of Justice, Washington, D.C., Jeffrey M. Johnson, Sp. Atty., U.S. Dept. of Justice, Chicago, Ill., Thomas P. Sullivan, U.S. Atty., Chicago, Ill., for appellant.

Michael B. Nash, William J. Linklater, George P. Lynch, Chicago, Ill., for appellee.

Allan A. Ackerman, Santo Volpe, Patrick A. Tuite, Chicago, Ill., for amicus curiae, Illinois Defense Lawyers Association.

Philip H. Corboy, Chicago, Ill., for amicus curiae, Chicago Bar Association.

Before FAIRCHILD, Chief Judge, and BAUER and CUDAHY, Circuit Judges.

BAUER, Circuit Judge.

The United States appeals a ruling of the district court denying its petition for a Rule to show cause why attorney Carl Walsh should not be held in contempt for refusing to testify before a grand jury and produce records. The district court quashed the subpoenas *duces tecum* and *ad testificandum* on the ground that compliance would violate the attorney-client privilege. We reverse and remand.

## I

This proceeding is another phase in the intrigue surrounding the burglary of the residence of Anthony J. Accardo. As reported in an earlier decision, "some time after the burglary—shortly thereafter, as a matter of fact—various people described by the government as 'known burglars' began showing up dead, none from natural causes, in the Chicago Metropolitan area." *United States v. One Residence and Attached Garage, etc.*, 603 F.2d 1231, 1232 (7th Cir. 1979).

A grand jury has been investigating possible federal criminal violations stemming from these events. Accardo family members and Michael Volpe, a handyman for Accardo who discovered the burglary, appeared before the grand jury, represented by appellee Carl M. Walsh.

The plot thickened when, sometime after Mr. Volpe's appearance before the grand jury, "he left his home for his usual place of employment—the Accardo residence—and seemingly disappeared from human knowledge." *Id.* at 1233. The grand jury then began investigating Volpe's disappearance. The attorney Walsh, believed to be one of the last persons to have seen Volpe, was subpoenaed. The subpoena[1] required Walsh to appear and testify and to produce:

1. Accounts receivable relating to Michael Joseph Volpe, Sr., including ledgers.

2. Time records which describe the amount of time spent by Carl M. Walsh in performing services for Michael Joseph Volpe, Sr.

3. Any and all entries in records, including but not limited to file memoranda, appointment books and calendars for the period from September 8, 1978 to October 31, 1978, which memorialize the date, place, and time of meetings and/or communications between Michael Joseph Volpe, and Carl M. Walsh and Carl M. Walsh's office employees.

4. Copies of all statements, bills, receipts and payments made by and for Mi-

---

1. The original subpoena sought Walsh's "fingerprints, palmprints [and] photograph." The government withdrew that subpoena on July 24, 1979 and substituted the current subpoena.

chael Joseph Volpe, Sr. relating to attorney services.

5. Retainer contracts, letters of understanding and letters of agreement for Michael Joseph Volpe, Sr. relating to the creation and continuation of an attorney-client relationship.

Walsh's motion to quash was denied and he was ordered to appear before the grand jury on July 11, 1979. Walsh came to the grand jury room on that date but refused to enter the room. The Government filed a motion for a rule to show case why Walsh should not be held in contempt. In ruling on that motion, Judge Parsons held that before an attorney could be required to appear before a grand jury at which his client had already testified, the Government must submit a list of proposed questions for *in camera* review and must establish:

(1) that the information and materials demanded by the subpoena are not within the ambit of the attorney-client privilege or the attorney work product exemption from disclosure, and (2) that there is a particularized need for the information or materials sought, that no other sources for such information are known or available, and that the information or materials sought are material to the investigation.

The Government submitted to the court an affidavit establishing the need for information from Walsh and a list of 73 proposed questions it intended to ask him. Without requiring Walsh to take the stand, the district court ruled that the "cumulative effect" of the proposed questions violated the attorney-client privilege. The court quashed the subpoenas and denied the Government's contempt motion. The Government appeals under 18 U.S.C. § 3731.[2]

## II

■ The first issue here is whether the attorney-client privilege insulates an attor-ney from having to appear before a grand jury investigating events which may implicate his clients. The grand jury, fundamental to our criminal justice system, performs "the dual function of determining if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes*, 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972). In pursuing its goal the grand jury exercises broad investigatory powers subject to the supervision of a judge.

■ In contrast stands the attorney-client privilege. The attorney-client privilege protects from disclosure confidential communications made by a client to his attorney. The privilege was developed to promote free consultation of legal advisors by clients. *In re January 1976 Grand Jury (Genson)*, 534 F.2d 719 (7th Cir. 1976). In *Radiant Burners, Inc. v. American Gas Association*, 320 F.2d 314, 319 (7th Cir.) (en banc), *cert. denied*, 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262 (1963), this Circuit adopted the Wigmore formulation of the privilege:

(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

8 Wigmore, Evidence § 2292 at 554 (McNaughton rev. 1961).

■ To reconcile the competing values served by the privilege and the grand jury, the privilege must be upheld only in those circumstances for which it was created.

---

2. Walsh contends that the Government's appeal is barred because he was tried for criminal, not civil, contempt. But none of the notices in the show cause proceeding stated that the action was one for criminal contempt as required by Fed.R.Crim.P. 42(b). The purpose of the proceeding below was to force Walsh to testify and produce records, not to punish him for his past failure to appear. *Pabst Brewing Co. v. Brewery Workers Local Union No. 77*, 555 F.2d 146, 149 (7th Cir. 1977); *F.T.C. v. Gladstone*, 450 F.2d 913 (5th Cir. 1971). Walsh indicated no doubt that the nature of the proceeding was civil. *United States v. Joyce*, 498 F.2d 592, 595 (7th Cir. 1974). The Government's appeal is therefore no violation of the double jeopardy clause of the Constitution and is permissible under 18 U.S.C. § 3731.

*Fisher v. United States,* 425 U.S. 391, 96 L.Ed. 1569, 48 L.Ed.2d 39 (1976). As it is in derogation of the search for truth, the privilege must not be lightly created nor expansively construed. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). No privilege, no matter how central to our system of justice, has been held to excuse the "obligation of every person to appear and give his evidence before the grand jury." *United States v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 769, 35 L.Ed.2d 67 (1973). Instead, the interest in preserving confidences and the interest in pursuing the public's right to "every man's evidence" are accommodated. To that end, the witness must take the stand and answer or refuse to answer individual questions. *Cf. Branzburg v. Hayes; Fisher v. United States.*

Walsh asserts that the attorney-client relationship will be endangered if he is compelled to testify. But the privilege protects confidential communications, not the attorney-client relationship as a whole. We do not denigrate the attorney-client privilege nor do we elevate the prerogatives of the grand jury. But were we to afford attorneys the right to refuse to appear before grand juries, we would be granting a protection far greater than the parameters of the privilege.

■ The district court ruled that the government could not question Walsh unless it established (1) that the materials and information sought were not covered by the attorney-client privilege and (2) that there was a particularized need for the information or materials sought, that no other sources for such information were known or available, and that the information or materials sought were material to the investigation. These restrictions, available to no other grand jury witness, are not a permissible method of accommodating the privilege to the grand jury. First, the burden of establishing the existence of a privilege rests on the party asserting it. *In re Grand Jury Empanelled February 14, 1978 (Markowitz),* 603 F.2d 469 (3d Cir. 1979); *United States v. Tratner,* 511 F.2d 248 (7th Cir. 1975). Second, since there is no privilege to refuse to appear before the grand jury, there can be no privilege to refuse to appear before the grand jury until the government demonstrates some compelling need for the counsel's testimony. *See Branzburg v. Hayes,* 408 U.S. at 708, 92 S.Ct. at 2670.

■ Walsh must take the stand without previous restrictions by the district court.[3] He may, of course, initially refuse to answer questions he believes to be protected by the attorney-client privilege. But a general refusal to cooperate or the mere assertion of the privilege is not enough. *See Hoffman v. United States,* 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). Walsh must establish the elements of the privilege as to each record sought and each question asked so that at the enforcement hearing the court can rule with specificity. *United States v. Hodgson,* 492 F.2d 1175 (10th Cir. 1974).

Before he can even claim the privilege, the attorney-witness must establish the fact of an attorney-client relationship. That task is complicated by Walsh's representation of both Accardo and Volpe. An enormous potential for conflict of interest is generated by Walsh's multiple representation of clients before the grand jury. *See In re Investigation Before the April 1975 Grand Jury (Rosen),* 531 F.2d 600 (D.C.Cir. 1976).[4] Since the privilege belongs to the client, Walsh must first establish the existence of an attorney-client relationship be-

3. Of course, the presiding judge maintains supervision as to the propriety, purposes and scope of the grand jury inquiry and the pertinence of the probable testimony. *Branzburg v. Hayes,* 408 U.S. at 709, 92 S.Ct. at 2670.

4. If the Government believes that Walsh's representation of all the witnesses presents a potential conflict of interest, it can seek to disqualify him. *In re Special February 1977 Grand Jury,* 581 F.2d 1262 (7th Cir. 1978); *In re Grand Jury Proceedings,* 428 F.Supp. 273 (E.D. Mich.1976). Such disqualification, however, would not affect the application of the attorney-client privilege here. *See United States v. Gaines,* 529 F.2d 1038, 1042 (7th Cir. 1976).

tween himself and Accardo or Volpe. He must then identify on whose behalf he asserts the privilege. *See, e. g., United States v. Cromer*, 483 F.2d 99 (9th Cir. 1973) (attorney must state for which client work was done).

To determine the existence of the attorney-client relationship, Walsh may be questioned as to the number of years during which the alleged relationship continued and the general nature of the legal services rendered. Business or other advice is not privileged, and should be distinguished from professional legal services. Such general inquiry will aid in identifying which areas may be pursued and which are protected. *Colton v. United States*, 306 F.2d 633 (2d Cir. 1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *see In re Kinoy*, 326 F.Supp. 400 (S.D.N.Y.1970).

Once the attorney-client relationship is established, inquiry will focus upon the nature of the communication or information sought. The relationship itself does not create "[a] cloak of protection [which is] draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *United States v. Goldfarb*, 328 F.2d 280, 281–82 (6th Cir.), *cert. denied*, 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964). The privilege "protects only those disclosures necessary to obtain informed legal advice which might not have been made absent the privilege." *Fisher v. United States*, 425 U.S. at 403, 96 S.Ct. at 1577. Walsh must therefore establish that each question he challenges involves a communication made in confidence.[5]

Some areas of inquiry have been held not privileged because they are not communications or are not confidential. For example, the fact of communication between a known client and his attorney is not a privileged communication. *United States v. Kendrick*, 331 F.2d 110 (4th Cir. 1964). Attorneys may be questioned as to their clients' whereabouts and whether they have had contact with them. *In re Grand Jury Subpoenas Served upon Field*, 408 F.Supp. 1169 (S.D.N.Y.1976).

> Excluded from the privilege, also, are physical characteristics of the client, such as his complexion, his demeanor, . . . and his dress. Such things are observable by anyone who talked with the client, and there is nothing, in the usual case, to suggest that the client intends his attorney's observations of such matters to be confidential.

*United States v. Kendrick*, 331 F.2d at 113–14. *Accord, Howell v. United States*, 442 F.2d 265 (7th Cir. 1971).

As a general rule, matters involving the receipt of fees from a client are not privileged as they do not involve confidential communications. *In re January 1976 Grand Jury (Genson); United States v. Hodgson; United States v. Haddad*, 527 F.2d 537 (6th Cir. 1975), *cert. denied*, 425 U.S. 974, 96 S.Ct. 2173, 48 L.Ed.2d 797 (1976). This is also true with respect to who paid the fee. *In re Michaelson*, 511 F.2d 882 (9th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975). The grand jury may thus view the documents sought by the subpoena, including ledgers, bills, time records, and retainer agreements. *See, e. g., United States v. Cromer*, 483 F.2d at 101.[6]

---

**5.** The proper procedure by which to determine the existence of the privilege is left to the trial court. We have approved the use of an *in camera* proceeding when the underlying facts demonstrating the existence of the privilege may be presented only by revealing the very information sought to be protected by the privilege. *United States v. Tratner*, 511 F.2d at 252; *see also In re Grand Jury Empanelled February 14, 1978 (Markowitz)*, 603 F.2d at 474; *United States v. Johnson*, 465 F.2d 793 (5th Cir. 1972).

**6.** An exception to the non-privileged status of retainer agreements exists where the payor client is unknown. This does not appear applicable to the record before us as Walsh's clients are admitted. *See, e. g., Tillotston v. Boughner*, 350 F.2d 63 (7th Cir. 1965); *see also N.L.R.B. v. Harvey*, 349 F.2d 900 (4th Cir. 1965) (client's identity will be protected when so much of the substance of the communication is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions).

*In re Grand Jury Proceedings (Lawson),* 600 F.2d 215 (9th Cir. 1979), recognized that non-privileged matters will be protected when an attorney can show that a strong probability exists that disclosure of information would implicate the client in the very criminal activity for which legal advice was sought. Even then, however, the information must be disclosed if the government makes a prima facie case that the attorney was retained in order to promote intended or continuing criminal activity. *United States v. Billingsley,* 440 F.2d 823, 827 (7th Cir.), *cert. denied,* 403 U.S. 909, 91 S.Ct. 2219, 29 L.Ed.2d 687 (1971). As stated in *United States v. Hodge and Zweig,* 548 F.2d 1347, 1354 (9th Cir. 1977), "the attorney-client privilege is not to be used as a cloak for illegal or fraudulent behavior." *Accord, In Grand Jury Subpoena Served upon David Doe,* 551 F.2d 899 (2d Cir. 1977); *In re Grand Jury Proceedings (FMC Corp.),* 604 F.2d 798 (3d Cir. 1979). It lies in the sound discretion of the trial judge to determine whether the Government makes a prima facie showing. *In re Special September 1978 Grand Jury (II),* (7th Cir. 1980); *In re September 1975 Grand Jury Term,* 532 F.2d 734 (10th Cir. 1976).

■■■■ Walsh is also required to testify concerning meetings at which third parties were present. *United States v. Pipkins,* 528 F.2d 559 (5th Cir. 1976). The attorney-client privilege does not protect such conversations with non-clients. 8 Wigmore, Evidence § 2311 at 601–602 (McNaughton rev. 1961). Walsh may be questioned about the fact of any such meeting, the place, its duration, its initiation, its purpose, and the contents of the conversation which took place. *In re Terkeltoub,* 256 F.Supp. 683 (S.D.N.Y.1966). Walsh must testify as to information received from a third party about his clients. *In re Fischel,* 557 F.2d 209 (9th Cir. 1977).

■■■ Walsh may also be asked if he told Volpe he had a duty to reappear before the grand jury if called. In similar cases, attorneys have been required to answer whether they informed their clients that they must appear on a particular date for trial or sentencing. *United States v. Freeman,* 519 F.2d 67 (9th Cir. 1975); *In re Grand Jury Proceedings, Des Moines, Iowa,* 568 F.2d 555 (8th Cir. 1977), *cert. denied sub nom., Black Horse v. U. S.,* 435 U.S. 999, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978).

We are cognizant of the dangers presented when attorneys are called before the grand jury, *see In re Grand Jury Investigation (Sturgis),* 412 F.Supp. 943 (E.D.Pa. 1976), and are aware that a *Lawson* -type situation may preclude discovery of otherwise non-privileged information. *See, e. g., In re Grand Jury Subpoenas Served upon Field,* 408 F.Supp. at 1173 (address privileged when lawyer gave legal advice concerning change of residence). Because of the district court's actions, however, Walsh was never required to prove the existence of the privilege or any exceptions to the non-privileged status of other information. We presume that Walsh is competent to protect his clients' confidential interests before the grand jury, *United States v. Wolfson,* 558 F.2d 59, 66 (2d Cir. 1977), and that he will cooperate on remand to the full extent of his professional obligations. Walsh must appear and testify. He will, on remand, have the opportunity to establish the applicability of the privilege to specific questions challenged.

We reverse the judgment of the district court quashing the subpoenas and denying the Rule to show cause. We remand for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.