In re **GRAND JURY INVESTIGATION** NO. 83–2–35.

No. 83–1290.

United States Court of Appeals, Sixth Circuit.

Argued June 23, 1983.

Decided Dec. 7, 1983.

Richard Durant, Detroit, Mich., for appellant.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., F. William Soisson, Asst. U.S. Atty., for appellee.

Before ENGEL and KRUPANSKY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

Attorney Richard Durant (Durant) appeals a finding of contempt for failure to disclose to the grand jury upon order of court the identity of his client. On March 1, 1983, Special Agent Edwards (Edwards), of the Federal Bureau of Investigation (FBI), visited Durant's office and explained that the FBI was investigating the theft of numerous checks made payable to International Business Machines, Inc. (IBM). He advised that a number of the stolen checks had been traced and deposited into various banking accounts under names of non-existent organizations, at least one of which included the initials "IBM". Edwards produced a photostatic copy of a check drawn upon one of these ficticious accounts which check was made payable to Durant's law firm. Upon FBI inquiry, Durant conceded that this check for $15,000 had been received and endorsed by his firm for services rendered to a client in two cases, one of which was "finished" and the other of which was "open". Durant refused to disclose the identity of his client to whose

credit the proceeds had been applied, asserting the attorney-client privilege.

Durant was subpoenaed to appear before the grand jury the following day, March 2, 1983, where he again refused to identify his client, asserting the attorney-client privilege. The government immediately moved the United States District Court for the Eastern District of Michigan for an Order requiring Durant to provide the requested information. At a hearing that same afternoon, Durant informed the court that disclosure of his client's identity could incriminate that client in criminal activity so as to justify invoking the attorney-client privilege. Citing to the court: *In re Grand Jury Appearance (Michaelson)*, 511 F.2d 882 (9th Cir.), *cert. denied*, 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975); *Baird v. Koerner*, 279 F.2d 623 (9th Cir.1960). Durant additionally stated that "I do not know any of the facts about this theft or anything else", and suggested that the requested information should be obtained through other methods.[1] The court adjudged that the privilege did not attach and ordered Durant to identify his client. Upon refusal to comply with this Order, Durant was held in contempt. Further proceedings (e.g. bond) were stayed until March 16, 1983, and subsequently stayed until March 22, 1983.

In an obvious attempt to ascertain the identity of Durant's client in an alternate manner, the United States issued a second subpoena to Durant on March 9, 1983, ordering him to appear before the grand jury on March 16, 1983, and produce the following documents:

A listing of all clients of the law firm of Durant & Durant, P.C., and Richard Durant as of February 18, 1983 including all clients with active cases and clients who owe fees or have provided a retainer to the firm and all client ledger cards and other books, records and documents reflecting or recording payments to the law firm for the period February 1, 1983 to March 1, 1983.

Durant moved to quash this subpoena duces tecum, again asserting the attorney-client privilege. At the March 22, 1983 hearing on this motion, Durant re-asserted that production of the subpoenaed documents could implicate his client in criminal activity. He additionally observed that the FBI had admitted before Durant and the district court judge in-chambers that an arrest would be effected by the FBI immediately following disclosure.[2] In effect, the identity of Durant's client was the last link of evidence necessary to effect an indictment. The Court was advised for the first time by Durant that on March 2, 1983 the FBI requested, under threat of harassment, that Durant "breach" the attorney-client privilege and identify his client without informing the client.[3]

---

1. Durant stated:

   I should add that if the facts as the agents have discussed them with me are correct and there is a substantial number of checks flowing around the city, all those checks come back to the drawee bank with bank endorsements on the back. It should be, it seems to me, equally possible, without violating the attorney-client privilege, for the agents to find out who presented, who cashed and to trace the money through normal commercial channels, to say nothing of the fact that who opens the mail at IBM now obviously becomes of significant importance.

2. Durant stated:

   I would remind the Court that when, through the courtesy of the Court, we had a session in-chambers with the members of the FBI present, as well as the U.S. Attorney and myself, the FBI members specifically said—I can't remember which one—specifically said

that as soon as we get the name of that client, we are going to arrest the client * * * The substance of this statement was never challenged either directly or indirectly by either the district court or the United States.

3. Durant stated:

   Furthermore—and I put this on the record after consultation with my son, who told me I should have expressed it on March 2nd. During the time the Court recessed, preparatory to rendering an opinion, this gentlemen—the FBI agent whose name escapes me for the moment—and I, the U.S. Attorney were outside, and I was given the proposition that I should tell the FBI the identity of my client, but not tell my client that I had done so, so that the FBI presumably could move in.

   When I rejected what was propositioned to me that I should give the identity but delay telling my client that I had done so, so pre-

The Court was informed that disclosure of the requested information would not only implicate Durant's client in criminal activity, but it would implicate that client in the very criminal activity for which legal advice had been sought.

COURT: Do you contend and do you submit that the disclosure of the information which is sought by this subpoena, quote, would implicate your client in the very criminal activity for which legal advice was sought?

MR. DURANT: Yes, Your Honor, I do.

COURT: Other than—in what way do you contend that it would?

MR. DURANT: Sir, I'm in a catch-22 position again. I can't tell you. If I tell you, I have explained things that my client obviously doesn't wish to be disclosed.

COURT: All right.

Durant failed to move the court for an *ex parte in camera* submission of evidence or testimony to establish that his client had indeed sought legal advice relating to past criminal activity · involving theft of IBM checks. Nor did the district court, *sua sponte,* suggest an *ex parte in camera* submission of evidence to probe Durant's blanket statements.

The United States then introduced the check into evidence in support of the proposition that it was improbable that Durant's client had engaged Durant's services to defend against impending charges of theft. A notation on the lower left hand corner of the check stated "corporate legal services". The United States observed "That doesn't say anything about crimes committed or to be committed or legal services in connection with criminal matters. It is 'corporate legal services'; no suggestion of any criminal investigation." It was additionally noted by the government that the FBI had not initiated the investigation nor had it been informed of the theft of the IBM checks until March 1st, approximately two weeks

*after* the check had been received by Durant. Durant offered the following rebuttal:

I don't know when IBM knew it (i.e. knew that checks had been stolen), but Mr. Edwards, when he appeared at my office, told me that it did involve checks from IBM, and I said that on March 2nd, when I appeared here.

I think the mere fact that the check says for "corporate legal services" when it has been admitted by the U.S. Attorney that such a corporation doesn't even exist, it is a fictional entity, doesn't deny what I am representing to the Court.

The district court, opining that the issues joined in the first and second subpoenaes served upon Durant were "essentially the same", withheld a decision of Durant's motion to quash the second subpoena duces tecum pending appellate resolution of the court's contempt Order of March 2, 1983.

■ Confronting the applicability of the attorney-client privilege as urged by Durant, it is initially observed that the privilege is recognized in the federal forum. *See: Fisher v. United States,* 425 U.S. 391, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1975); Rule 501, Federal Rules of Evidence. The burden of establishing the existence of the privilege rests with the person asserting it. *See: In re Walsh,* 623 F.2d 489, 493 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); *Liew v. Breen,* 640 F.2d 1046, 1049 (9th Cir.1981); *United States v. Stern,* 511 F.2d 1364, 1367 (2nd Cir.1975); *United States v. Landof,* 591 F.2d 36, 38 (9th Cir.1978); *In re Grand Jury Empanelled February 14, 1978 (Markowitz),* 603 F.2d 469, 474 (3d Cir.1979); *United States v. Hodgson,* 492 F.2d 1175 (10th Cir. 1974); *United States v. Tratner,* 511 F.2d 248, 251 (7th Cir.1975); *United States v. Demauro,* 581 F.2d 50, 55 (2d Cir.1978); *United States v. Ponder,* 475 F.2d 37, 39 (5th Cir.1973); *United States v. Bartlett,*

sumably the same result could occur—when I rejected that, I hope in jest, it was pointed out that I could be printed and held incommunicado for six or seven hours while the circuit was written [ridden[sic]] with me, and

I implied it was a good thing that I had instructed my office that if they hadn't heard from me by 3:30, to come over here with a writ of habeas corpus. I made a phone call.

449 F.2d 700, 703 (8th Cir.1971), *cert. denied,* 405 U.S. 932, 92 S.Ct. 990, 30 L.Ed.2d 808 (1972). The attorney-client privilege exists

> to protect confidential communications between a lawyer and his client in matters that relate to the legal interests of society and the client.

*In re Grand Jury Proceedings (Fine),* 641 F.2d 199, 203 (5th Cir.1981). *Accord: In re Grand Jury Subpoena (Slaughter),* 694 F.2d 1258, 1260 (11th Cir.1982); *United States v. Hodge and Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977); *In re Grand Jury Investigation (Tinari),* 631 F.2d 17, 19 (3d Cir.1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869–70, 66 L.Ed.2d 808 (1981). The policy behind protecting confidential communications is self-evident:

> In order to promote freedom of consultation of legal advisors by clients, the apprehension of compelled disclosure from the legal advisors must be removed; hence the law must prohibit such disclosure except on the client's consent.

*Hodge & Zweig, supra,* 548 F.2d at 1353, citing 8 J. Wigmore, *Evidence,* § 2291 at 545 (McNaughton Rev.Ed.1961). *Accord Fisher, supra,* 425 U.S. at 403, 96 S.Ct. at 1577 ("The purpose of the privilege is to encourage clients to make full disclosure to their attorneys").[4] *See also: United States v. Goldfarb,* 328 F.2d 280 (6th Cir.) *cert. denied,* 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964).

■ Since the attorney-client privilege may serve as a mechanism to frustrate the investigative or fact-finding process, it creates an inherent tension with society's need for full and complete disclosure of all relevant evidence during implementation of the judicial process. *See: In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 671–72, (5th Cir.1975) ("the purpose of the privilege—to suppress truth—runs counter to the dominant aims of law"). In particular, invocation of the privilege before the grand jury may jeopardize an effective and comprehensive investigation into alleged violations of the law, and thereby thwart that body's dual functions of determining "if there is probable cause to believe that a crime has been committed and of protecting citizens against unfounded criminal prosecutions." *Branzburg v. Hayes,* 408 U.S. 665, 686–87, 92 S.Ct. 2646, 2659, 33 L.Ed.2d 626 (1972).[5] These competing societal interests demand that application of the privilege not exceed that which is necessary to effect the policy considerations underlying the privilege, i.e., "the privilege must be upheld only in those circumstances for which it was created." *In re Walsh, supra,* 623 F.2d at 492. *Accord: Fisher, supra,* 425 U.S. at 403, 96 S.Ct. at 1577 ("it applies only where necessary to achieve its purpose.") As a derogation of the search for truth, the privilege is to be narrowly construed. *See: United States v. Weger,* 709 F.2d 1151, 1154 (7th Cir.1983); *Baird v. Koerner,* 279 F.2d 623, 631–32 (9th Cir.1960); *United States v. Pipkins,* 528 F.2d 559, 562–63 (5th Cir.1976).

■ The federal forum is unanimously in accord with the general rule that the identity of a client is, with limited exceptions, not within the protective ambit of the attorney-client privilege. *See: In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026, 1027 (5th Cir.1982) (en banc); *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 670–71 (5th Cir.1975); *In re Grand Jury Proceedings (Fine),* 641 F.2d 199, 204 (5th Cir.1981); *Frank v. Tomlinson,* 351 F.2d 384 (5th Cir. 1965), *cert. denied,* 382 U.S. 1028, 86 S.Ct. 648, 15 L.Ed.2d 540 (1966); *In re Grand Jury Witness (Salas),* 695 F.2d 359, 361 (9th Cir.1982); *In re Grand Jury Subpoenas*

---

4. The Court additionally noted
> As a practical matter, if the client knows that damaging information could more readily be obtained from the attorney following disclosure than from himself in the absence of disclosure, the client would be reluctant to confide in his lawyer and it would be difficult to obtain fully refined legal advice.

425 U.S. at 403, 96 S.Ct. at 1577.

5. It is fundamental, however, that although the subpoena powers of the grand jury are extremely broad, it may not use its authority to "violate a valid privilege, whether established by the Constitution, statutes, or the common law." *United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974).

*Duces Tecum (Marger/Merenbach),* 695 F.2d 363, 365 (9th Cir.1982); *In re Grand Jury Proceedings (Lawson),* 600 F.2d 215, 218 (9th Cir.1979).[6]

■ The Circuits have embraced various "exceptions" to the general rule that the identity of a client is not within the protective ambit of the attorney-client privilege. All such exceptions appear to be firmly grounded in the Ninth Circuit's seminal decision in *Baird v. Koerner,* 279 F.2d 623 (9th Cir.1960). In *Baird* the IRS received a letter from an attorney stating that an enclosed check in the amount of $12,706 was being tendered for additional amounts due from undisclosed taxpayers. When the IRS summoned the attorney to ascertain the identity of the delinquent taxpayers the attorney refused identification asserting the attorney-client privilege. The Ninth Circuit, applying California law, adjudged that the "exception" to the general rule as pronounced in *Ex parte McDonough,* 170 Cal. 230, 149 P. 566 (1915) controlled:

> The name of the client will be considered privileged matter where the circumstances of the case are such that the name of the client is material only for the purpose of showing an acknowledgement of guilt on the part of such client of the very offenses on account of which the attorney was employed.

*Baird, supra,* 279 F.2d at 633. The identity of the *Baird* taxpayer was adjudged within this exception to the general rule. The Ninth Circuit has continued to acknowledge this exception:

> A significant exception to this principle of non-confidentiality holds that such information may be privileged when the person invoking the privilege is able to show that a strong possibility exists that disclosure of the information would implicate the client in the very matter for which legal advice was sought in the first case.

*In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach),* 695 F.2d 363, 365 (9th Cir.1982). *Accord: United States v. Hodge and Zweig,* 548 F.2d 1347, 1353 (9th Cir. 1977); *In re Grand Jury Proceedings (Lawson),* 600 F.2d 215, 218 (9th Cir.1979); *United States v. Sherman,* 627 F.2d 189, 190–91 (9th Cir.1980); *In re Grand Jury Witness (Salas),* 695 F.2d 359, 361 (9th Cir.1982). This exception, which can perhaps be most succinctly characterized as the "legal advice" exception, has also been recognized by other circuits. *See: In re Walsh,* 623 F.2d 489, 495 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); *In re Grand Jury Investigation (Tinari),* 631 F.2d 17, 19 (3d Cir.1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869–70, 66 L.Ed.2d 808 (1981). Since the legal advice exception is firmly grounded in the policy of protecting confidential communications, this Court adopts and applies its principles herein. *See: In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach), supra.*

■ It should be observed, however, that the legal advice exception may be defeated through a *prima facie* showing that the legal representation was secured in furtherance of present or intended continuing illegality, as where the legal representation itself is part of a larger conspiracy. *See: In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach), supra,* 695 F.2d at 365 n. 1; *In re Walsh,* 623 F.2d 489, 495 (7th Cir.), *cert. denied,* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980); *In re Grand*

---

**6.** This general rule applies equally to fee arrangements:

> In the absence of special circumstances, the amount of money paid or owed to an attorney by his client is generally not within the attorney-client privilege. *In re Michaelson,* 511 F.2d 882, 888 (9th Cir.) *cert. denied,* 421 U.S. 978, 95 S.Ct. 1979, 44 L.Ed.2d 469 (1975); *see In re Grand Jury Proceedings,* 517 F.2d 666, 670–71 (5th Cir.1975). The receipt of fees from a client is not usually within the privilege because the payment of a fee is not normally a matter of confidence or a communication. *United States v. Hodgson,* 492 F.2d 1175 (10th Cir.1974). This Court has held that ministerial or clerical services of an attorney in transferring funds to or from a client is not a matter of confidence protected by the attorney-client privilege. *United States v. Bartone,* 400 F.2d 459 (6 Cir.1968), *cert. denied,* 393 U.S. 1027, 89 S.Ct. 631, 21 L.Ed.2d 571 (1969).

*United States v. Haddad,* 527 F.2d 537, 538–39 (6th Cir.1975).

*Jury Investigation (Tinari)*, 631 F.2d 17, 19 (3d Cir.1980), *cert. denied*, 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); *In re Grand Jury Proceedings (Lawson)*, 600 F.2d 215, 218 (9th Cir.1979); *United States v. Friedman*, 445 F.2d 1076, 1086 (9th Cir. 1971). *See also: Clark v. United States*, 289 U.S. 1, 15, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933); *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026, 1028–29 (5th Cir. 1982) (en banc).

■ Another exception to the general rule that the identity of a client is not privileged arises where disclosure of the identity would be tantamount to disclosing an otherwise protected confidential communication. In *Baird, supra*, the Ninth Circuit observed:

If the identification of the client conveys information which ordinarily would be conceded to be part of the usual privileged communication between attorney and client, then the privilege should extend to such identification in the absence of other factors.

*Id.*, 279 F.2d at 632. Citing *Baird*, the Fourth Circuit promulgated the following exception:

To the general rule is an exception, firmly bedded as the rule itself. The privilege may be recognized where so much of the actual communication has already been disclosed that identification of the client amounts to disclosure of a confidential communication.

*NLRB v. Harvey*, 349 F.2d 900, 905 (4th Cir.1965). *Accord: United States v. Tratner*, 511 F.2d 248, 252 (7th Cir.1975); *Colton v. United States*, 306 F.2d 633, 637 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *Tillotson v. Boughner*, 350 F.2d 663, 666 (7th Cir.1965); *United States v. Pape*, 144 F.2d 778, 783 (2d Cir.1944). *See also: Chirac v. Reinecker*, 24 U.S. (11 Wheat) 280, 6 L.Ed. 474 (1826). The Seventh Circuit has added to the *Har-*

*vey* exception the following emphasized caveat:

The privilege may be recognized where so much of the actual communication has already been disclosed [*not necessarily by the attorney, but by independent sources as well*] that identification of the client [*or of fees paid*] amounts to disclosure of a confidential communication.

*United States v. Jeffers*, 532 F.2d 1101, 1115 (7th Cir.1976) (emphasis added). The Third Circuit, applying this exception, has emphasized that it is the link between the client and the *communication*, rather than the link between the client and the possibility of potential criminal *prosecution*, which serves to bring the client's identity within the protective ambit of the attorney-client privilege. *See: In re Grand Jury Empanelled February 14, 1978 (Markowitz)*, 603 F.2d 469, 473 n. 4 (3d Cir.1979). Like the "legal advice" exception, this exception is also firmly rooted in principles of confidentiality.

■ Another exception, articulated in the Fifth Circuit's en banc decision of *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026 (5th Cir.1982) *(en banc)*,[7] is recognized when disclosure of the identity of the client would provide the "last link" of evidence:

We have long recognized the general rule that matters involving the payment of fees and the identity of clients are not generally privileged. *In re Grand Jury Proceedings, (United States v. Jones)*, 517 F.2d 666 (5th Cir.1975); *see* cases collected *id.* at 670 n. 2. There we also recognized, however, a limited and narrow exception to the general rule, one that obtains when the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment.

*Id.* at 1027.[8] Upon careful consideration this Court concludes that, although lan-

---

7. It appears that *Pavlick sub silentio* overruled *In re Grand Jury Proceedings (Fine)*, 641 F.2d 199 (5th Cir.1981), wherein a panel of the Fifth Circuit applied the "legal advice" exception rather than a "last link" exception.

8. The Eleventh Circuit has adopted the "last link" exception as pronounced in *Pavlick*. *See: In re Grand Jury Proceedings (Twist)*, 689 F.2d 1351, 1352–3 (11th Cir.1982); *In re Grand Jury Subpoena (Slaughter)*, 694 F.2d 1258, 1260

guage exists in *Baird* to support viability of *Pavlick's* "last link" exception,[9] the exception is simply not grounded upon the preservation of confidential *communications* and hence not justifiable to support the attorney-client privilege. Although the last link exception may promote concepts of fundamental fairness against self-incrimination, these concepts are not proper considerations to invoke the attorney-client privilege. Rather, the focus of the inquiry is whether disclosure of the identity would adversely implicate the confidentiality of communications. Accordingly, this Court rejects the last link exception as articulated in *Pavlick.*

Turning to the facts at bar, it is observed that Durant asserted three justifications for invocation of the attorney-client privilege. First, at the March 2 hearing, he stated that disclosure might possibly implicate the client in criminal activity. As this justification has no roots in concepts of confidentiality or communication, it cannot be advanced to support an abdication of the general rule that identity of a client is not privileged. Second, at the March 22 hearing, Durant informed the Court that the FBI had informed him that an arrest would be effected upon disclosure of the identity of Durant's client. This is simply an assertion that disclosure would provide the last link of evidence to support an indictment as articulated in *Pavlick*—a precedent which is herein rejected.

■ Third, at the March 22 hearing, Durant submitted that disclosure was justified under the "legal advice" exception embraced by the Ninth Circuit. Seeking to invoke this exception, it was incumbent upon Durant to "show that a *strong possibility* exist[ed] that disclosure of the infor-

mation would implicate the client in the very matter for which legal advice [had been] sought in the first case". *In re Grand Jury Subpoenas Duces Tecum (Marger/Merenbach), supra,* 695 F.2d at 365 (emphasis added). A well recognized means for an attorney to *demonstrate* the existence of an exception to the general rule, while simultaneously preserving confidentiality of the identity of his client, is to move the court for an *in camera ex parte* hearing. *See: In re Grand Jury Witness (Salas), supra,* 695 F.2d at 362; (proper procedure to establish existence of "legal advice" exception was to make an *in camera* showing); *In re Grand Jury Empanelled February 14, 1978 (Markowitz), supra,* 603 F.2d at 474 (referring to procedure to be employed by an attorney who asserts Fifth Amendment privilege); *In re Grand Jury Subpoena (Slaughter), supra,* 694 F.2d at 1260 n. 2 (United States requested in its subpoena that any averred privileged matters be deleted and the original copy retained intact for possible *in camera* inspection by the district court); *In re Walsh, supra,* 623 F.2d at 494 n. 5; *United States v. Tratner, supra,* 511 F.2d at 252.

■ Since the burden of establishing the existence of the privilege rests with the party asserting the privilege, it is incumbent upon the attorney to move for an *in camera ex parte* hearing if one is desired. In the action *sub judice,* Durant failed to so move. Rather, he rested on his blanket assertion that his client had initially sought legal advice relating to matters involving the theft of IBM checks. Such unsupported assertions of privilege are strongly disfavored. *See: United States v. Cromer,* 483

---

(11th Cir.1982). *See also: In re Grand Jury Proceedings (Jones),* 517 F.2d 666 (5th Cir. 1975), adopted by the Eleventh Circuit as precedent in *Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981). Compare, however, *In re Grand Jury Proceedings, (Freeman),* 708 F.2d 1571, 1573–74 (11th Cir.1983), affirming a contempt order issued by a district court which applied the "legal advice" rather than "last link" exception.

9. Although *Baird* observed in passing that disclosure of the identity of the clients "may well be the link that could form the chain of testimony necessary to convict [the taxpayers] of a federal crime", 279 F.2d at 633, the Court repeatedly emphasized that the retention of the attorney and remission of a check to the IRS was tantamount to a *communication* or admission from the clients to the attorney that "they had not paid a sufficient amount in income taxes some one or more years in the past". *Id.*

F.2d 99, 102 (9th Cir.1973); *United States v. Davis,* 636 F.2d 1028, 1044 n. 20 (5th Cir. 1981); *In re Grand Jury Witness (Salas), supra,* 695 F.2d at 362. Further, it is pertinent to observe that at the first hearing on March 2 Durant had expressly disavowed knowledge of the existence of stolen IBM checks. This statement significantly diminishes the credibility of Durant's subsequent March 22 representation that his client had indeed engaged Durant's services for past activity relating to stolen IBM checks. Accordingly, Durant clearly failed to satisfy his burden of demonstrating a "strong possibility" that disclosure of the identity of his client would implicate that client in the very manner for which legal advice had been initially sought.

Last, it is observed that Durant did not represent to the district court that disclosure of the identity of his client would amount to a disclosure of a confidential communication. *See: NLRB v. Harvey, supra; United States v. Jeffers, supra.* Not having advanced this exception to the general rule, it follows axiomatically that Durant failed to satisfy the burden of establishing its existence. Nor does the record suggest the viability of this exception so as to justify a remand.

In sum, Durant has failed to establish the existence of any exception to the general rule that disclosure of the identity of a client is not within the protective ambit of the attorney-client privilege. Therefore the contempt Order of the district court issued against Durant is hereby AFFIRMED.