787 F.2d 592
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
JAMES B. PUCKETT, Plaintiff-Appellee,
vs.
ARVIN/CALSPAN FIELD SERVICES, INC., Defendant-Appellant.
 85-5300
 United States Court of Appeals, Sixth Circuit.
 3/14/86
 
 Before KRUPANSKY and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appeals from an adverse verdict in an ADEA[1] jury trial conducted by consent before a magistrate. 28 U.S.C. Sec. 636(c). An important part of plaintiff's proofs concerned statements allegedly made by defendant's officers at staff meetings held in November of 1981, at which a force reduction was discussed. Four specific statements relating to age or age by implication were introduced. Over defendant's objections, these statements were testified to by John L. Stephens. Stephens is an attorney who was in defendant's employ at the time the age related statements were allegedly made, and the defendant claims the attorney-client privilege should have barred Stephens' testimony. At trial, defendant moved for a directed verdict at the close of plaintiff's proofs, and also moved for judgment n.o.v. after the adverse verdict. It is from the denial of these motions that defendant appeals. For the reasons discussed below, we affirm.
 
 I.
 
 2
 In November 1980, plaintiff Puckett, an engineer, retired from the ARO company, a subsidiary of the Sverdrup Corporation. Puckett was 62 at the time. In January, 1981, defendant hired plaintiff as a new employee at age 63. Defendant (Calspan) was doing government contract work and, in the autumn of 1981, reduced funding by the U. S. Air Force made it necessary for Calspan to lay off both hourly and salaried personnel. In November of 1981, Calspan laid off 10 salaried employees. Five, including plaintiff, were in the protected age bracket (40-70). Two volunteered for lay-off and one (age 40) was physically unable to do the work required of him.
 
 
 3
 One of the salaried personnel laid off at the same time as Puckett was John Stephens. Stephens, like plaintiff, had also worked for ARO and was hired by Calspan in January 1981. Stephens' job title was 'Assistant to the General Manager--Administration,' although he was an attorney by profession and previously had been legal counsel for ARO. It is undisputed that one of the reasons Calspan hired Stephens was for his legal and government contracting experience. There is a also no dispute that during Stephens' entire tenure with Calspan he handled legal matters and provided legal advice, among his other duties. At various times, Stephens referred to himself in documents as 'Division Counsel-Calspan' and 'company counsel.' Stephens testified at the trial, however, that two to three months after joining Calspan he was advised by a Calspan vice president that he would not be used further in a legal capacity and that references to his legal capacity should be removed from his stationary and cards.
 
 
 4
 There is no doubt that during Stephens' entire eleven month tenure with Calspan he wore both an administrative and a legal hat. For example, in September of 1981, while wearing his 'legal hat,' he authored a legal memorandum at the request of Calspan regarding equal employment opportunity law implications of force reductions. Beyond peradventure, Stephens, being a lawyer, had the kind of relationship with his employers which could have resulted in communication between them being covered by the attorney client privilege. The question for resolution here is whether the specific communications in question were privileged. Resolution of that issue requires further elaboration on the November 2 and November 9, 1981, meetings at which the communications allegedly occurred.
 
 
 5
 In attendance at the November 2, 1981, staff meeting were King D. Bird, Calspan's general manager and vice president; several top staff personnel including John W. Davis; and Stephens. At this meeting, among other things, the subject of the impending force reduction was discussed. This was not a special meeting but a regular weekly Monday staff meeting. Bird was discussing the proposed staff cut and allegedly stated: 'This is a good time to weed out the old ones.' At these regular Monday meetings, anyone in attendance could add whatever was felt to be helpful, and Stephens pointed out at this time that it was Air Force policy to try to transfer people, and it was agreed that a voluntary force reduction would be tried first. Stephens drafted a notice to this effect which was agreed to, but, at the Monday, November 9, meeting, the idea was scrapped at the direction of the home office in Buffalo as being 'too civil servantish.'
 
 
 6
 Stephens testified that Director Davis then said, 'I will include Mr. Puckett. He has already been retired from Sverdrup.' Another director stated, 'I have one that is 64 years of age who is on sick leave and I'm going to have him come back and I will convince him that he ought to retire.'[2] At this point, Stephens testified that he expressed his concern with the apparent plan for reduction and counseled those present that if they proceeded in that manner they would be in violation of 'EEOC matters.' He also indicated it would violate Calspan's own written policies with regard to older employees. Stephens had written the policies. At trial, Stephens described this exchange as follows:
 
 
 7
 THE COURT: The question was: Were you asked to give this advice at the meetings on 11-2-81 and 11-9-81?
 
 
 8
 THE WITNESS: Your honor, it was just implied when we were there that anyone who has anything that they can offer to offer that advice. I can't say that I was directly asked but it was well received.
 
 
 9
 (App. 89)
 
 II.
 
 10
 Rule 501 of the Federal Rules of Evidence provides 'the privilege of a witness, person, government, state, or political subdivision thereof, shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in the light of reason and experience.' It is not open to question that historically the Federal common law has always recognized the attorney-client privilege. Chirac v. Reinicker, 11 Wheat. 280, 6 L.Ed. 474 (1826). Although there have been some minor definitional differences between circuits, the elements of the privilege are usually referenced by all Federal courts with remarkable similarity. Typical is the definition adopted by this circuit in United States v. Goldfarb, 328 F.2d 280, 281 (1964):
 
 
 11
 The essentials of the general rule are stated in 8 Wigmore, Evidence Sec. 2292, at 554 (McNaughton rev. 1961) as follows:
 
 
 12
 '(1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection can be waived.'
 
 
 13
 In Goldfarb, this court recognized that the attorney-client privilege 'does not envelope everything arising from the existence of an attorney-client relationship' and emphasized that 'the attorney-client privilege is an exception carved from the rule requiring full disclosure, and as an exception, should not be extended to accomplish more than its purpose.' 328 F.2d at 282. In In re Grand Jury Investigation No. 83-2-35, 723 F.2d 447 (6th Cir. 1983), cert. denied 104 S.Ct. 3524 (1984), this court reiterated the principle that the attorney-client privilege should be narrowly construed. Additionally, the party asserting the privilege has the burden of proof that it applies. Weil v. Investment/Indicators, Research & Management, 647 F.2d 18 (9th Cir. 1981).
 
 
 14
 Historically, the fact that the one asserting the attorney-client privilege was a corporation presented certain problems. However, these problems have been largely resolved by the decision of the United States Supreme Court in Upjohn v. United States, 449 U.S. 383 (1981). Upjohn rejected the 'control group' test for determining which individuals in a corporation may claim the privilege and indicated that the totality of the circumstances rather than the identity or title of the speaker is the test. No Upjohn issues are implicated here.
 
 
 15
 Defendant's argument for reversal is largely predicated upon two main assertions: (1) Stephens and Calspan had an attorney-client relationship, and (2) the statements about which Stephens testified were made in a staff meeting which one would normally consider to be a confidential setting. Although such circumstances, in the abstract, are relevant to the analysis of the proper application of the attorney-client privilege, they do not presuade when looked at specifically in the context of what actually occurred here.
 
 
 16
 It can be assumed that the vice president of a corporation, discussing internal matters with high level staff, would expect these matters to be treated confidentially. However, this expectation of confidentiality is not in and of itself a basis for any kind of privilege. It may have been disloyal for Stephens to reveal these conversations, and he may have been motivated to do so as retaliation for his own discharge, but neither of these factors stand in the way of otherwise admissible evidence being placed before the trier of fact. These are factors which affect the weight but not the admissiblity of testimony.
 
 
 17
 It is equally clear that everything that is said between an attorney and client is not privileged, nor is the mere presence of an attorney as a member of a group being spoken to sufficient to invoke the privilege even when the spaker is properly identifiable as one of the attorney's clients.
 
 
 18
 Defendant places considerable emphasis on Stephens' written communication of September 28, 1981, to K. D. Bird (App. 355-358). When this communication is analyzed, its purpose and intent are clear. Stephens felt that in the event of any force reduction Calspan would be in a better position if lay-offs were made pursuant to a written policy. Accordingly, he, with the help of others, formulated a written lay-off procedure for Calspan. This memo is not, as suggested by Calspan, a legal analysis of EEOC compliance procedures, nor does it related specifically to the law regarding age discrimination. It is also totally consistent with the type of work that an administrative assistant to a general mamager would perform.
 
 
 19
 The statements about which Stephens was allowed to testify were not made in reference to the September 28 memo, nor were they made in the context of discussing any legal issues as such. The general discussion was on force reduction, and when Bird made his statement about this being a good time 'to weed out the old ones,' he was not seeking legal advice nor was it a statement responding to legal advice being offered. The trier of fact could rightfully have viewed this as a statement of company intent and it was certainly relevant to the issue of whether age was a determining factor in the lay-offs.
 
 III.
 
 20
 In addition to raising the specific issue of the attorney-client privilege, defendant also claims on appeal that plaintiff did not make out a prima facie case and, thus, defendant's motion for a directed verdict at the close of plaintiff's proofs should have been granted. Much of defendant's argument is predicated upon the premise that but for the admission of the statements of Stephens there would have been inadequate proof to make out a prima facie case. Since we have already disposed of this evidentiary issue, no further discussion of this point is necessary.
 
 
 21
 To the degree that defendant argues that even with the statements in evidence plaintiff did not make out a prima facie case, we reject this argument. This court has rejected any mechanistic approach to the method of proof required of the plaintiff in an age discrimination case. Rose v. National Cash Register Corp., 703 F.2d 225 (6th Cir.), cert. denied, 464 U.S. 939 (1983). In discussing the requirements of a prima facie case, the United States Supreme Court stated:
 
 
 22
 The burden of establishing a prima facie case of disparate treatment is not onerous. The plaintiff must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.
 
 
 23
 Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (footnote omitted). Here, there is no dispute that plaintiff, at age 62, was a member of the protected class. There was ample evidence from which the jury could have found that he was performing satisfactorily and that he was discharged 'under circumstances which give rise to an inference of unlawful discrimination.' On this latter point, there was the fact that a substantial number of those laid off were the older employees; the statements made by company officers and supervisors which carried negative age implications; the warning Stephens gave to Davis about the inappropriateness of applying 'power ratings'[3] to plaintiff; and, on the issue of plaintiff's qualifications, the relative ease and quickness with which plaintiff was able to secure another similar position. Although most of this evidence is circumstantial, it was sufficient to make out a prima facie case, and it is only plaintiff's prima facie case which is challenged on appeal. LaGrant v. Gulf & Western Mfg. Co., Inc., 748 F.2d 1087 (6th Cir. 1984), relied on by the defendant, is distinguishable. Although LaGrant does make the statement that '[w]hen there is a corporate reorganization or reduction in forces, a prima facie case is not established when plaintiff does not show that he was replaced by a younger person,'[4] this statement was made in the context of a McDonnell Douglas[5] analysis only. After clearly rejecting the necessity for adherence to McDonnell Douglas criteria, the LaGrant court goes on to state:
 
 
 24
 The plaintiff in such reorganization cases must come forward with additional direct, circumstantial, or statistical evidence that age was a factor in his termination in order to establish a prima facie case. Williams, 656 F.2d at 129. LaGrant has not succeeded in this regard. He has come forward with nothing, other than his subjective determination that he was better qualified than Walatkiewicz, to indicate that age played a role in Gulf & Western's decision to terminate him. This is not a case where the plaintiff presented evidence that management favored younger workers, tended to fire older workers, or indicated in some manner that older workers were held in disfavor.
 
 
 25
 748 F.2d at 1091.
 
 
 26
 In the case at bar plaintiff did not rely on a McDonnell Douglas approach but, rather, presented additional evidence of a type referenced as appropriate in LaGrant.
 
 
 27
 We find no error in the trial court's denial of defendant's motion for directed verdict and judgment n.o.v. We affirm.
 
 
 
 [1]
 Age Discrimination in Employment Act, 29 U.S.C. Sec. 621 et seq
 
 
 [2]
 All of these statements were allowed into evidence over defendant's objections
 
 
 [3]
 'Power rating' refers to a totem or rank order evaluation of employees (App. 363). Stephens cautioned Davis that a straight, subjective evaluation with no guidelines for evaluation of performance would not pass muster (App. 90)
 
 
 [4]
 748 F.2d at 1090
 
 
 [5]
 411 U.S. 792 (1973)